UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
DAVID M. TROTMAN, JR.,

                           Plaintiff,

      -against-

VINCENT F. DEMARCO, ERROL TOULMON,
C.O. ASHLEY WEST, C.O. BRIAN BANGEL,
C.O. FRANK BARTOLI, C.O. STEVEN QUINONES,
C.O. JASON YUEN, C.O. RICHARD CLARK,
CORRECTIONS SERGEANT RICHARD OLSEN, and
CORR. LIEUTENANT KARL SCHNEIDER,

                           Defendants.
------------------------------------------------------------------------X
DAVID MICHAEL TROTMAN, JR.,

                           Plaintiff,

      -against-

THOMAS LOMBARDY, SGT. NICHOLAS RUSSO,
SGT. THOMAS COTTER, SGT. EDWARD FRANKS,
SGT. AGNIESZKA BIENKOWSKI, and ERROL
TOULMON,

                           Defendants.
------------------------------------------------------------------------X

**18 CV 2180 (GRB)(LB)**[1]

**18 CV 3577 (GRB)(LB)**

**BLOOM, United States Magistrate Judge:**

_____

[1] Judge Matsumoto consolidated cases No. 18-cv-2180 ("the lead case") and No. 18-cv-3577 ("the member case") under Docket No. 18-cv-2180 for the purposes of discovery and motion practice. See Jan. 24, 2020 Order ("all defendants are represented by the same counsel . . . both actions involve common issues of law given that counsel for defendants intends to move for summary judgment in both actions on identical legal grounds. Consolidation of these actions will avoid unnecessary cost or delay, will not prejudice plaintiff, and will otherwise promote judicial economy…").

Unless otherwise noted, references to docket entries in this Report refer to the lead case. Any references to documents filed under the member case are identified by both docket and entry number.

## REPORT AND RECOMMENDATION

Plaintiff brings these *pro se* civil rights actions against defendants under 42 U.S.C. § 1983 alleging defendants violated his Constitutional rights by using excessive force against him and by failing to protect him. Defendants move for summary judgment on all claims pursuant to Fed. R. Civ. P. 56 on the ground that plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e ("PLRA"). ECF No. 106. The Honorable Gary R. Brown referred defendants' motions to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).[2] For the reasons set forth below, it is respectfully recommended that defendants' motions for summary judgment should be granted.

## FACTS[3]

The events giving rise to these actions took place on four dates, between October 2017 and May 2018, while plaintiff was incarcerated at Suffolk County Correctional Facility. The following facts are taken from plaintiff's complaints, the exhibits the parties submitted on the summary

---

[2] These cases were reassigned several times. See Mar. 8, 2019 Order (reassigning the lead case from the Honorable Joseph F. Bianco and the Honorable Steven I. Locke to the Honorable Pamela K. Chen and the Honorable Sanket J. Bulsara); May 30, 2019 Order (reassigning the lead case to the Honorable Kiyo A. Matsumoto and me); No. 18-cv-3577, Apr. 8, 2019 Order (reassigning the member case from Judge Bianco and Judge Locke to Judge Matsumoto and me); Feb. 10, 2020 Order (reassigning the case to the Honorable Gary R. Brown); No. 18-cv-3577, Feb. 10, 2020 Order (same).

[3] Unless otherwise stated, the facts are undisputed.

judgment briefing,[4] and defendants' Local Civil Rule 56.1 Statement of Facts,[5] ("Defs' 56.1 Stmt.") ECF No. 106-2. Defendants also provided plaintiff with requisite notice under Local Rule 56.2. See ECF Nos. 106-13–15.

### A. October 24, 2017

Plaintiff alleges that on October 24, 2017, around 8:00 a.m., he was attacked by three Sheriff's Emergency Response Team ("S.E.R.T.") Officers while he was being transported to Southampton Village Court. Complaint, ECF No. 1 ("Compl."); Plaintiff's December 1, 2017 Statement to the Internal Affairs Bureau ("Pls.' Dec. 1, 2017 IAB Stmt."). On that date, plaintiff was handcuffed to a chain with other inmates as they were led through the jail as a group. Plaintiff's Deposition Transcript ("Pl. Dep.") ECF No. 106-6, 21:12-23. Plaintiff admits that he called the officers names but states he "did not use curse words or make threats," and that the officers responded by cuffing him, throwing him to the ground, kicking him, and bending his fingers, resulting in a fracture to his left ring finger. Pls.' Dec. 1, 2017 IAB Stmt.; Compl. Defendants assert that plaintiff made verbal threats to them and

---

[4] Plaintiff's Opposition to Defendants' 56.1 Statement ("Pl.'s 56.1 Opp'n") ECF No. 106-19, states that he attached Exhibits A through K to his opposition. Defendants state that plaintiff did not provide Exhibit A, "Disposition From Plaintiff 12-23-2019" with his opposition papers. See ECF No. 106. No Exhibit A has been provided to the Court. Exhibits B through E are video clips of the events giving rise to the suit. They were provided to the Court in October 2019. Exhibits F through H, plaintiff's sworn statements to the Suffolk County Sheriff's Office, were provided to defendants and filed with plaintiff's opposition. ECF Nos. 106-21, 106-22, 106-23. Plaintiff lists "Interrogatories Filed on 8/24/2018" as Exhibit J. Plaintiff's interrogatories in the lead case are dated 8/24/2018 but were never filed. A copy of the interrogatories and defendants' responses, however, were provided to the Court in 2019. See ECF No. 61. As Exhibit K, plaintiff lists "Interrogatories Filed on 9-21-2020 in Reference to 3577." Plaintiff's interrogatories in the member case are dated 9/21/2020 but were filed on 10/28/2020. No. 18-cv-3577, ECF No. 69-1.

[5] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). The Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. The Court has thoroughly reviewed the record and deems admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

physically resisted them; defendants deny that plaintiff was kicked, choked, or smacked. Defendants' Response to Plaintiff's Interrogatories 8/24/18 ("Defs.' Resp. to Pl.'s Interrog.") Nos. 12, 13, 16. Plaintiff made a complaint to the Suffolk County Sheriff's Internal Affairs Bureau ("IAB"), see Pls.' Dec. 1, 2017 IAB Stmt, but did not file a grievance about the incident through the Suffolk County Correctional Facility process. Pl. Dep. 39:11-14.

**B. <u>January 25, 2018</u>**

Plaintiff alleges that on the morning of January 25, 2018, he was attacked by another inmate in the Behavioral Modification Housing Unit ("BMHU") because defendant Corrections Officer Lombardi failed to protect him. Member Case Complaint ("Mem. Compl.") No. 18-cv-3577, ECF No. 1.[6] Defendants state that the BMHU logbook reflects that an inmate was relocated from cell one to cell five at 9:15 a.m. Defendants' Response to Plaintiff's Interrogatories ("Defs.' Resp. to Pl.'s Interrog.") No. 5, No. 18-cv-3577, ECF No. 69-1. Defendants dispute, however, that any inmate-on-inmate attack occurred at that time. <u>Id.</u> No. 3. Plaintiff did not file a grievance through the formal process at Suffolk County Correctional Facility regarding this event.[7] Pl. Dep. 65:16-18. Defs.' 56.1 Stmt. ¶ 4.

**C. <u>February 27, 2018</u>**

On February 27, 2018, around 12:00 p.m., plaintiff was being transported to Mid-Hudson Forensic Psychiatric Center. Defendant Sergeant Cotter entered the elevator on the fourth floor as plaintiff was being transported. Defs.' Resp. to Pl.'s Interrog. No. 11; Plaintiff's April 23, 2018 Statement to the Internal Affairs Bureau ("Pls.' Apr. 23, 2018 IAB Stmt."), ECF No. 106-22; Mem. Compl. p. 4. Plaintiff was "front cuffed and shackled." Defs.' Resp. to Pl.'s Interrog. No. 13; Pls.'

---

[6] Plaintiff alleges that Lombardy "conspired" and "allowed a security breach." Mem. Compl. at 4.

[7] Plaintiff produced IAB statements for the incidents on the other three dates in question but not for the alleged January 25, 2018 incident. ECF No. 106-21, 106-22, 106-23.

Apr. 23, 2018 IAB Stmt. Plaintiff alleges that defendant Cotter attacked him by hitting plaintiff's head and thrusting his knee into plaintiff's lower back. Mem. Compl. p. 4. Defendants deny that defendant Cotter hit plaintiff. Defs.' Resp. to Pl.'s Interrog. No. 13. Plaintiff made a complaint to the IAB, ECF No. 106-22, but he did not file a grievance through the formal grievance process at Suffolk County Correctional Facility regarding this event. Pl. Dep. 65:20-22. Defs.' 56.1 Stmt. ¶ 4.

### D. **May 5, 2018**

On May 5, 2018 around 9:15 a.m., defendant Cotter entered plaintiff's cell to remove a magazine page, which plaintiff was not permitted to have on display. Mem. Compl. p. 14; Plaintiff's May 17, 2018 Statement to the Internal Affairs Bureau ("Pls.' May 17, 2018 IAB Stmt.") ECF No. 106-23; Defs.' Resp. to Pl.'s Interrog. Nos. 16, 20. Plaintiff alleges that Cotter "smacked[ed] [him] once in [his] right eye" after Cotter "removed a photograph from the shelf located inside [plaintiff's] cell." Pls.' May 17, 2018 IAB Stmt. Defendants deny that Sergeant Cotter hit plaintiff. Defs.' Resp. to Pl.'s Interrog. No. 19. On May 17, 2018, plaintiff filed a statement with the IAB about the alleged May 5, 2018 incident, see Pls.' May 17, 2018 IAB Stmt., but plaintiff did not file a grievance through the formal grievance process regarding this event. Pl. Dep. 75:8-20; Defs.' 56.1 Stmt. ¶ 4.

## PROCEDURAL HISTORY

Plaintiff filed his complaint in the lead case on April 11, 2018, ECF No. 1, and in the member case on June 15, 2018, No. 18-cv-3577, ECF No. 1. In both actions, the Court granted plaintiff's motions to proceed *in forma pauperis* and directed the Suffolk County Attorney ("Suffolk County") to identify the individual defendants in plaintiff's complaints who plaintiff alleged violated his rights, pursuant to Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997). ECF No. 9;[8] No. 18-cv-3577, ECF

---

[8] Suffolk County identified the individuals as Corrections Officer Ashley West, Corrections Officer Brian Bangel, Corrections Officer Frank Bartoli, Corrections Officer Steven Quinones, Corrections Officer Jason

No. 13. Suffolk County answered on behalf of defendants. ECF No. 17; No. 18-cv-3577, ECF No. 19.[9]

In both cases, plaintiff moved to compel defendants to produce the surveillance video of the incidents at issue in his lawsuits. ECF Nos. 14, 34;[10] No. 18-cv-3577, ECF Nos. 8, 9, 24, 30. In No. 18-cv-3577, these requests were made prior to the initial conference setting a discovery schedule. Suffolk County reported that it had asked the jail to preserve any video from the dates in question, No. 18-cv-3577, ECF No. 31, and the Court denied plaintiff's motions to compel without prejudice to renew should defendants fail to produce existing video during discovery. See No. 18-cv-3577, Nov. 19, 2018, May 13, 2019 Order.

In the lead case, the Court granted in part and denied in part plaintiff's motion to compel and directed Suffolk County to produce the video for plaintiff's review on the date of his deposition or, if plaintiff was released from custody, within ten days after receiving notification of plaintiff's release. See Oct. 9, 2018 Order.[11]

On April 8, 2019 and May 30, 2019, these cases were reassigned to me.[12] Plaintiff requested a stay of the proceedings in both actions as he anticipated he would be released from custody shortly.

---

Yuen, Corrections Officer Richard Clark, Corrections Sergeant Richard Olsen, and Corrections Lieutenant Karl Schneider. ECF No. 16.

[9] At first, only Defendants Lombardy and Toulmon answered the complaint. No. 18-cv-3577, ECF No. 19. Suffolk County later filed an amended answer, identifying all defendants and answering on behalf of Corrections Officer Thomas Lombardy, Suffolk County Sherriff Errol Toulmon, Corrections Sergeant Nicholas Russo, Corrections Sergeant Thomas Cotter, Corrections Sergeant Edward Franks, and Corrections Sergeant Agnieszka Bienkowski. No. 18-cv-3577, ECF No. 40.

[10] Plaintiff also requested to be relocated to another facility. ECF Nos. 18, 23, 27, 28. These requests were denied without prejudice. ECF Nos. 24, 25, 46.

[11] Several months later, plaintiff reported that he still had not been given the opportunity to review the videos and moved for sanctions. ECF No. 53. The Court denied plaintiff's motions but directed defendants to promptly arrange for plaintiff to view the videos at his facility. ECF No. 57. At the May 29, 2019 status conference, plaintiff instead agreed to receive a copy of the video recordings after he was released from custody.

[12] Before these cases were formally consolidated, I conferenced the two actions together.

ECF No. 64, 18-cv-3577, ECF No. 36. The Court directed plaintiff to notify the Court of his expected release date and any change in his address. See May 22, 2019 Order; No. 18-cv-3577, ECF No. 35. When there was no release date set for plaintiff, the Court held a conference and scheduled the close of discovery. ECF No. 68; No. 18-cv-3577, ECF No. 39.[13] Defendants' counsel agreed to arrange for plaintiff to view the video recordings in both of his cases at his deposition.[14]

After his deposition, plaintiff again moved to compel defendants to produce the videos and moved for sanctions against defendants for "deliberately delet[ing]" the January 25, 2019 video data. No. 18-cv-3577, ECF No. 51. Defendants responded that video was available for the February 27, 2018 and May 5, 2018 events in plaintiff's complaint, but that defendants' search for video footage related to the January 25, 2018 event revealed that the footage had been overwritten prior to the filing of plaintiff's complaint and no longer existed. No. 18-cv-3577, ECF No. 52. The Court denied plaintiff's motions based on defendants' representation that they had produced the videos regarding the February 27, 2018 and May 5, 2018 events and that no video existed for the January 25, 2018 event. No. 18-cv-3577, ECF No. 55.

Discovery closed on January 10, 2020[15] and defendants requested a pre-motion conference to move for summary judgment. ECF No. 74; 18-cv-3577, ECF No. 53. On January 24, 2020, these two

_____

[13] The Court granted defendants permission to depose plaintiff while he was incarcerated pursuant to Federal Rule of Civil Procedure 30(a)(2)(B) and granted defendants' motions for a writ of habeas corpus ad testificandum. ECF No. 71; 18-cv-3577, ECF No. 48.

[14] Plaintiff again moved to compel defendants to produce the videos, No. 18-cv-3577, ECF No. 41, and based on defendants' counsel's representation that he would arrange for plaintiff to view the videos, the Court denied plaintiff's request as moot, No. 18-cv-3577, ECF No. 44.

[15] Plaintiff moved to compel defendants to respond to interrogatories after the discovery deadline. No. 18-cv-3577, ECF No. 61. However, as plaintiff maintained that he served the interrogatories on defendants prior to the discovery deadline, the Court reviewed the interrogatories and directed defendants to respond to them. No. 18-cv-3577, ECF Nos. 67–68. Plaintiff's other requests to compel discovery after the deadline, ECF Nos. 84, 93, 98, were denied as untimely, ECF Nos. 89, 103.

actions were consolidated.[16] Judge Brown referred the pre-motion letters and defendants' motions for summary judgment, ECF No. 106, to me for a Report and Recommendation. Sept. 2, 2020 Order; 18-cv-3577, Aug. 27, 2020 Order.

## DISCUSSION

### I.  Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also, Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

If the moving party meets its burden in establishing the absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477

---

[16] Plaintiff moved to sever these consolidated matters. ECF No. 94. The request was denied. ECF No. 97.

U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, the Court "reads [his] papers liberally and interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)) (internal quotations omitted).

Factual disputes regarding a prisoner's failure to exhaust administrative remedies under the PLRA, however, do not entitle the inmate to a jury trial. See Heyliger v. Gebler, 624 Fed. Appx. 780, 783 (2d Cir. 2015) (summary order) (affirming summary judgment for defendants, stating that plaintiff "was not entitled to trial on the issue of exhaustion");[17] Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011) (per curiam) ("the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA"). "Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact." Abdur-Rahman v. Terrell, No. 10-cv-3092, 2012 WL 4472119, at *5 (E.D.N.Y. Sept. 25, 2012).

## II. The Prison Litigation Reform Act ("PLRA") Exhaustion Requirement

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they

---

[17] The Clerk of Court shall send plaintiff copies of the attached unreported cases cited herein.

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[.]" See Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory and "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); see also Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

To properly exhaust all remedies, the PRLA mandates that an inmate must use "all steps that the agency holds out, and [do] so properly (so that the agency addresses the issues on the merits).'" Jones v. Sposato, No. 16-cv-5121, 2017 WL 4023135, at *4 (E.D.N.Y. Aug. 22, 2017) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)) (emphasis in original), Report and Recommendation adopted, 2017 WL 4023345 (E.D.N.Y. Sept. 11, 2017); Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) ("Regardless of whether [complaints through other channels] put the prison officials on notice of his grievance 'in a substantive sense,' [...] to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies"); Harrison v. Goord, No. 07 Civ. 1806, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) (inmates are required to exhaust their administrative remedies even if they believe that administrative remedies would be "ineffective or futile") (internal citations omitted).

The administrative review process is thus defined "not by the PLRA, but by the prison grievance process" and the Court's exhaustion inquiry requires review of "the [county] prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Jones, 2017 WL 4023135, at *4 (internal citations and quotation marks omitted). "[F]ailure to exhaust is an affirmative defense under the PLRA that must be raised and proven by defendants." Villafane v. Sposato, No. 16-cv-3674, 2017 WL 4179855, at *10 (E.D.N.Y. Aug. 22,

10

2017) (citation and internal quotation marks omitted), Report and Recommendation adopted, 2017 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017).[18]

Whether administrative remedies have been exhausted does not end the Court's inquiry because "the PLRA contains its own textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." Id. The Supreme Court has identified three kinds of circumstances in which an administrative remedy is unavailable:

> First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Williams v. Correction Officer Priatno, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting Ross, 136 S. Ct. at 1859–60). It is plaintiff's burden to prove that a grievance procedure is unavailable. Hubbs v. Suffolk Cty Sheriff's Dep't., 788 F.3d 54, 59 (2d Cir. 2015).

Section V.C. of the Suffolk County Sheriff's Office's Inmate Handbook details Suffolk County Correctional Facility's formal grievance program, The Inmate Grievance Program. See ECF No. 106-7, at 12–13 ("Inmate Handbook") ("An inmate must file a grievance within (5) days of the date of the act or occurrence giving rise to the grievance…"). The grievance program dictates that an inmate must first fill out a grievance form, the Housing Sergeant will then attempt to resolve the grievance, and if it cannot be resolved, the grievance will be forwarded to the Grievance Coordinator who investigates and gives a written determination within five (5) business days. Id. at 12. If the inmate does not agree with the decision, the Inmate Handbook also details the process for the inmate

---

[18] Defendants' answers raised failure to exhaust under the PLRA as affirmative defenses in both cases. ECF No. 17; No. 18-cv-3577, ECF Nos. 19, 40.

11

to appeal, first to the Warden, and then to the State Commission of Correction. Id. Section V.A. of the Inmate Handbook describes a separate complaint process by which an inmate may report abuse to the Internal Affairs Unit within the Sheriff's Office which will prompt an investigation of the alleged misconduct. Id. at 11 ("you *may* report it to the Internal Affairs Unit *and/or* submit a grievance in accordance with the grievance procedure.") (emphasis added). This is a separate complaint process that does not supplant the facility's grievance procedure.

Here, the record makes clear that plaintiff did not file a grievance within five days of the four incidents he alleges in his two cases. See Affidavit of Sergeant Matthew Bogert ("Bogert Aff.")  ECF No. 106-11, at 6; Pl.'s 56.1 Opp'n at 4. Plaintiff testified during his deposition that he did not file a grievance regarding any of the four events underlying his instant complaints. See Pl. Dep. at 39:11-14, 65:16-18, 65:20-22, 75:8-20. Further, plaintiff makes no argument that failure to exhaust should be excused on any of the grounds outlined in Ross. There is nothing in the record that suggests that the formal grievance program operates "as a simple dead end," that plaintiff was thwarted from taking advantage of the process, nor that the grievance process is "so opaque" that it is incapable of use. Ross, 136 S. Ct. at 1859. Plaintiff testified that he received the Inmate Handbook upon arrival at Suffolk County Correctional Facility and that he was familiar with the grievance process. Pl. Dep. 19:7-17, 21:8-11. Indeed, plaintiff filed a grievance regarding his request for a vegetarian diet through the facility's grievance process while at Suffolk County Correctional Facility. Id. at 19:22-25, 20:2-25; Bogert Aff. at 7; see New York State Grievance Form 11/17/17, ECF No. 106-8.

Instead plaintiff states, without explanation, that the events giving rise to his claims are "non-greivable or exempt from P.L.R.A. guidelines." Plaintiff's Memorandum of Law ("Pl.'s Mem.") ECF No. 106-20.[19] This is not true. As discussed above, the PLRA applies to *all* inmate suits about prison

---

[19] It is possible that by stating his claim is "non-greivable," plaintiff means that that grievances regarding claims of excessive force are rarely found to be substantiated. See Affidavit of Sergeant Gregory Lambert ("Lambert Aff.") at 9. ("It is not uncommon that grievances relating to the use of excessive force cannot be substantiated

life, including excessive force claims, and the exhaustion requirement is mandatory. The types of claims that are grievable at Suffolk County Correctional Facility include claims of excessive force. See Inmate Handbook at 13 ("The following decisions will not be subject of a grievance…" (excessive force and failure to protect are not listed)). By referencing his IAB complaints, plaintiff seems to suggest that the IAB process can replace the grievance process. Pl.'s Opp'n to Defs.' R. 56.1 Stmt, ECF No. 106-18, at ¶ 4 ("…excessive force is mostly a non-grieveable issue. The plaintiff contacted the Internal Affairs Bureau"). This is also not the case. The PLRA requires strict adherence to the *grievance* process set forth by Suffolk County Correctional Facility. The IAB complaints are not a substitute for complying with the prison grievance procedures.

Although plaintiff does not explicitly raise it, the Court notes that plaintiff could not successfully raise an argument that Suffolk County's dual complaint system is rendered unavailable by its potential ambiguity. The Supreme Court refused to permit an exception to the PLRA exhaustion requirement when an inmate made a reasonable mistake about the meaning of a prison's grievance procedures. Ross, 136 S. Ct. at 1859. Further, in Stewart v. Suffolk Cty. Sheriff's Office, the Second Circuit addressed this issue specifically with regard to Suffolk County Correctional Facility's inmate complaint procedures:

> The inmate handbook provided that abuses could be reported to the internal affairs unit 'and/or' through the inmate grievance program, and it is uncontested that [plaintiff] did not take any of the steps to file a complaint through the inmate grievance program. Although either method of reporting would trigger an investigation within the Sheriff's Office, the handbook makes clear that they are not equivalent: for instance, an inmate appears entitled to a ruling and an opportunity to challenge investigators' conclusions within the agency only for reports made through the inmate grievance program. Accordingly, [plaintiff's] internal affairs report did not satisfy the PLRA's administrative exhaustion requirement, and no ambiguity or misstatement in the inmate handbook rendered its administrative remedies unavailable to him.

---

by the Grievance Coordinator. If this is the case, the determination is provided in writing to the inmate, which enables the inmate to pursue an appeal of that determination should they choose.")

Stewart v. Suffolk Cty. Sheriff's Office, 792 Fed. Appx. 136, 138, *4 (2d Cir. 2020) (summary order) (affirming the district court's decision granting summary judgment and dismissing the complaint for failure to exhaust). As such, plaintiff cannot demonstrate that the grievance program was "unavailable" to him.

Accordingly, there is no issue of material fact regarding whether plaintiff exhausted his administrative remedies as required under the PLRA regarding the incidents at issue in his case. Plaintiff did not exhaust the administrative remedies at Suffolk County Correctional Facility. Therefore, I respectfully recommend that defendants' motion for summary judgement should be granted.[20]

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion for summary judgment should be granted, and plaintiff's complaints should be dismissed for plaintiff's failure to exhaust his administrative remedies under the PLRA.

---

[20] Additionally, defendants argue that any claims against Sergeant Toulon and Former Sergeant DeMarco should be dismissed because plaintiff fails to allege that these defendants were personally involved in the alleged violations of his constitutional rights. It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks and citation omitted). "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority[.]" Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)).

As neither of plaintiff's complaints mention Toulon or DeMarco, despite his argument that they are liable "due to respondeat superior," see Pl.'s Mem., defendants' motion regarding plaintiff's claims against defendants Toulon and DeMarco should also be granted on this basis.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 17, 2021
       Brooklyn, New York

15